IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CT-3163-FL

| | | |
|---|---|---|
| SHI DONG PING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| WARDEN C. RATLEDGE, MEDICAL REVIEW COMMITTEE, and THE L.C. EICHENLAUB, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

This matter comes now before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 36). The issues raised have been fully briefed and are ripe for adjudication.

**STATEMENT OF THE CASE**

For ease of reference, the statement of the case as set forth in the court's December 8, 2015, order is as follows:

> On June 20, 2014, plaintiff, a federal inmate, filed this civil rights action *pro se* pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), naming the Federal Bureau of Prisons ("BOP") Regional Director L.C. Eichenlaub ("Eichenlaub"), Butner Medical Review Committee, and Warden C. Ratledge ("Ratledge") as defendants. Plaintiff subsequently filed an amended complaint on July 8, 2014. Plaintiff alleged in his pleadings that defendants refused to provide him with an explanation of his medical condition and that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

> On February 18, 2015, defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that the court lacked subject matter jurisdiction to review the BOP's decision denying plaintiff's request for compassionate release pursuant to 18 U.S.C. § 3582(c). Defendants alternatively assert that plaintiff failed to state an Eighth or Fourteenth Amendment claim pursuant to Rule 12(b)(6). The motion was fully briefed. On June 24, 2015, the court entered an order denying as moot defendants' motion to dismiss plaintiff's compassionate release claim. The court additionally granted defendants' motion to dismiss plaintiff's Fourteenth Amendment claim, but denied their motion to dismiss plaintiff's Eighth Amendment claim.
>
> On August 6, 2015, defendants filed a second motion to dismiss pursuant to Rule 12(b)(6) arguing plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed. The next day, the court entered a case management order providing deadlines for discovery and any dispositive motions. Plaintiff subsequently filed a motion for clarification of the record and a motion for discovery.

(DE 29).

On December 8, 2015, the court denied without prejudice plaintiff's motion to compel discovery and denied plaintiff's motion for clarification. As part of its order, the court noted that plaintiff asserted, in response to defendants' motion to dismiss, that defendants had not responded to plaintiff's discovery requests seeking the individual names of the medical review committee members. The court proceeded to inform plaintiff that he could amend his complaint to include the names of the individual medical review committee members after he discovered their identities. The court granted in part and denied in part defendants' second motion to dismiss. The court granted defendants' motion as to plaintiff's claim against the medical review committee, but denied the remainder of the motion. Finally, the court set a new discovery deadline of February 8, 2016, and new dispositive motion deadline of March 21, 2016.

2

On December 17, 2015, plaintiff filed a motion to amend his complaint to include Warden J. Andrews ("Andrews") as a defendant in this action. The court granted plaintiff's motion. On February 10, 2016, plaintiff filed a motion to compel defendants to respond to his requests for interrogatories sent to defendants on January 15, 2016. The motion was fully briefed. The court granted plaintiff's motion on April 6, 2016, and directed defendants to respond to plaintiff's interrogatories within 14 days.

In the interim, defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that plaintiff is unable to establish a supervisor liability claim against defendants. Alternatively, defendants assert that they are entitled to the affirmative defense of qualified immunity. Defendants attached to their motion the following documents: affidavits from each defendant; a November 26, 2012, letter from defendant Andrews to plaintiff; grievance responses; and defendant Ratledge's response to plaintiff's request for a reduction in sentence. Plaintiff filed a response to the instant motion on March 25, 2016.

## STATEMENT OF FACTS

Plaintiff, a federal inmate, currently is serving a term of life-imprisonment for his convictions for conspiracy to commit hostage taking and hostage taking. (DE 13, Ex. 1). He is a Chinese national and speaks little English. (Am. Compl. p. 1). In November 2010, plaintiff was diagnosed with undifferentiated nasal pharyngeal carcinoma. (DE 13, Ex. 2). After receiving surgery related to his condition, prison officials transferred plaintiff to the Federal Medical Center in Butner, North Carolina ("Butner") for follow-up medical care. (Compl. p. 3). On January 4, 2011, plaintiff had an endoscopy with gastrostomy tube placement. (DE 13, Ex. 2). Plaintiff received both chemotherapy and radiation treatment at Butner from February 8, 2011, through May 5, 2011.

3

(Compl. p. 3). According to plaintiff, his "throat was burned so bad [during his post-surgical treatment] that it constricted so tight that a feeding tube had to be surgically inserted into his stomach." (Id. p. 4.) Eventually, plaintiff's Percutaneous Endoscopic Gastronomy ("PEG") tube was removed. ((DE 13), Ex. 2). After the tube was removed, "the incision was not closed but left open to fester and allow the possibility of a staph infection which could prove fatal." (Am. Compl. p. 2.) Due to his cancer treatment, plaintiff no longer is able to eat solid food and relies upon Ensure liquid products to meet his dietary needs. (Compl. p. 4). Plaintiff states research shows that in cases like his, "the throat would be dilated with a series of sessions, [but that] plaintiff has had only one." (Id.) When plaintiff inquired as to why he has had only one session, he received no reply. (Id.) Plaintiff states that he "seldom" was provided a translator to answer questions and that his limited ability to speak English has hindered his ability to communicate with medical staff as to his pain level or course of treatment. (Am. Compl. p. 2). Plaintiff further states that defendants and medical staff have ignored his requests for information regarding his medical condition such as why he is not able to eat or whether his condition is permanent. ((DE 15), p. 7).

In 2012, plaintiff filed a request to defendant Andrews, the warden, for a reduction in sentence due to a declining or deteriorating health condition. ((DE 13), Ex. 4). On November 26, 2012, defendant Andrews provided plaintiff with the following response which states in pertinent part:

> Your medical condition was reviewed to determine whether you meet the Reduction in Sentence guidelines due to a declining or deteriorating health condition. You have a diagnosis of Nasopharyngeal Carcinoma. The Oncology team indicated you are in remission at this time. You may reapply in the future if your cancer reappears.

(Id.) Plaintiff subsequently appealed defendant Andrews' response to the Mid-Atlantic Regional Director's Office ("RDO")– defendant Eichenlaub.[1] (Id. Ex. 6). The RDO denied plaintiff appeal stating in pertinent part: "Your condition has been sufficiently addressed and prescribed medication and treatment is appropriate. You are encouraged to continue to work with your primary care provider team for other health care related issues and concerns." (Id.) Plaintiff subsequently appealed the RDO's decision to the National Inmate Appeals Administrator, who denied plaintiff's appeal stating in pertinent part: "[A] careful review of your circumstances indicates that your medical condition is responding to treatment and your life expectancy is indeterminate at this time. Thus, you do not meet the medical criteria for [reduction in sentence] credit." (Id. Ex. 8).

Plaintiff filed a grievance on August 8, 2013, in which he asked for an assessment of his throat condition. (Andrews Decl. ¶ 5 and Ex. 2). Upon receiving the grievance, defendant Andrews' administrative staff reviewed plaintiff's file, which included his medical records, and prepared a written response which defendant Andrews signed. (Id.) Andrews' response stated in pertinent part:

> [Y]ou were diagnosed with nasopharyngeal cancer and you received chemotherapy and radiation. You had a barium swallow test performed in February 2013, which concluded you were at risk for aspiration. Therefore, you are discouraged from consuming nutrition orally. You have a nutritional supplement ordered that is to be consumed by way of your peg tube.
>
> You have a Chronic Care appointment scheduled on September 12, 2013, to review your status. Your treatment plan and questions regarding your feeding tube can be discussed with your physician at that time.

(Id.)

---

[1] The RDO's response's to plaintiff's grievances were signed by the Deputy Regional Director of the Mid-Atlantic Region, on behalf of Regional Director Defendant Eichenlaub. (Eichenlaub Decl. ¶ 8).

5

Plaintiff next appealed Andrews' response to the RDO. (Eichenlaub Decl. ¶ 7 and Attach. 2). The RDO denied plaintiff's appeal, and provided plaintiff a detailed explanation. (Id. Attach. 2). Specifically, the RDO stated that the warden "appropriately summarized the medical care [plaintiff was] receiving." (Id.) The RDO additionally stated in pertinent part:

> Most recently, you were evaluated by clinical staff at Chronic Care Clinic (CCC) on September 12, 2013, at which time you were informed you need to wait a few more months to be sure you can properly swallow again before the peg tube can be removed.
>
> Regarding your request for a detailed explanation in writing regarding your throat condition, you should complete an Inmate Request to Staff form to request copies of your medical records.
>
> Your medical plan of care, developed and implemented by your primary care provider team, is adequate and complete. Your condition has been sufficiently addressed and prescribed medication and treatment is appropriate. You are encouraged to continue to work with your primary care provider team for other health care related issues and concerns.

(Id.)

After receiving the RDO's response, plaintiff appealed the decision to the Central Office. (DE 13, Ex. 13). Plaintiff, in his appeal, accused defendants Andrews and Eichenlaub of covering up the medical review committee members' deliberate indifference to his medical needs. (Id.) Plaintiff also stated that his "condition was caused [by] malpractice from a radiologist who has been terminated from the [Federal Medical Facility]." (Id.) On January 28, 2015, the National Inmate Appeals Administrator responded to plaintiff, and stated in pertinent part:

> Documentation related to your appeal reveals you had stage IV nasopharyngeal cancer and received chemotherapy and radiation from February 2011 until April 2011. You had difficulty swallowing. You underwent a Swallow Study which revealed you had severe oropharyngeal dysphagia (difficulty swallowing) and were at high risk of aspiration (entry of food or drink into the respiratory tract). You received a Percutaneous Endoscopic Gastronomy (PEG) tube

> placement on January 4, 2011, due to your difficulty swallowing and high risk of aspiration. The PEG tube was removed on October 29, 2013, due to you being able to drink Boost Plus, a nutritional drink. You underwent an EDG on December 7, 2013, which suggested the etiology of your swallowing problem may be multifactorial from dry mouth as a result of the radiation treatment. You underwent a whole body PET scan on February 24, 2014, which revealed suspicious recurrence of the cancer. You were evaluated by the ENT provided on June 9, 2014, which recommended you to have another PET scan within the next three to six months. The ENT provider determined there was no evidence of recurrent cancer clinically. You had a PET scan on October 31, 2014, which did not reveal an active tumor. You were evaluated by Gastroenterology on November 18, 2014, who determined you do not need to have the PEG tube replaced. You have a scheduled appointment with an ENT specialist and will have a PET scan in four to five months.
>
> The record reflects you received medical care and treatment in accordance with evidence based standard of care and within the scope of services of the Federal Bureau of Prisons. . . . You have access to medical sick call if your conditions exacerbates or worsens.

(DE 15, Attach. p. 7).

On August 23, 2014, plaintiff filed a second request for a reduction in his sentence based on a debilitating medical condition. (Ratledge Decl. ¶ 4 and Ex. 1). On October 15, 2014, plaintiff's clinical social worker contacted plaintiff's primary physician regarding the medical appropriateness of plaintiff's request for a reduction in sentence. (DE 13, Ex. 14). The social worker received a "denial memo" from plaintiff's physician on October 21, 2014. (Id.) On November 5, 2014, defendant Ratledge denied plaintiff's request, and provided the following explanation which stated in pertinent part:

> Your medical team indicated you were diagnosed with nasopharyngeal carcinoma in 2010. This was treated with radiation and chemotherapy with a good response. You have been monitored by an Oncologist and an Otolaryngologist with no evidence of recurrence. The treatment has left you will difficulty swallowing; however, you have maintained your weight with a nutritional support

7

> solution. You are able to function in general population without assistance.
>
> While you have this medical condition, you are stable at this time and your life expectancy is indeterminate. You remain independent in your activities of daily living and are housed on an outpatient unit. Your medical conditions are managed by the Health Services Department. Therefore, you are not medically appropriate for reduction in sentence, as you do not meet the medical guidelines at this time. However, if your medical conditions change, please feel free to resubmit an Inmate Request to Staff (cop out) for consideration.

((DE 13), Ex. 15). Plaintiff's social worker then met with plaintiff on November 14, 2014, and explained the denial memorandum to plaintiff. (Id. Ex. 14).

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2.     Analysis

Defendants raise the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly

8

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In analyzing whether defendants are entitled to qualified immunity, the court first will first consider whether plaintiff has established a constitutional violation.

Plaintiff contends that defendants Andrews, Ratledge, and Eichenlaub acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff brings this claim against defendants pursuant to a theory of supervisor liability. A supervisor may be liable for the actions of a subordinate if:

> (1)  the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
>
> (2)  the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and
>
> (3)  there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Plaintiff alleges that defendants Andrews, Ratledge, and Eichenlaub had full knowledge of the medical review committee members' alleged deliberate indifference to his serious medical needs and acted to "hide" and "cover-up" the alleged deliberate indifference. (Pl.'s Resp. (DE 27), p. 4). There is no evidence that defendants had actual or constructive knowlege that any member of the

9

medical review committee, or any other medical board, concealed or attempted to conceal any alleged medical malpractice or that any member of the medical review committee failed to provide or to fully disclose truthful information to plaintiff. Moreover, in response to defendants' motion for summary judgment, plaintiff did not provide this court with any additional substantive allegations or evidence that show that any defendant was personally involved in the decisions regarding plaintiff's medical care.

The lack of substantive allegations or proof of defendants' personal involvement in plaintiff's medical care is fatal to this case. Even if plaintiff did produce evidence that defendants had personal knowledge of the decisions regarding plaintiff's medical care from their participation in the administrative remedy[2] or their evaluation of plaintiff for a reduction of sentence, plaintiff still would not be entitled to relief because non-medical prison officials, such as defendants, are entitled to rely on the judgment of medical personnel as to the appropriate medical treatment of inmates. Shakka, 71 F.3d at 167; Farmer, 511 U.S. at 840. Thus, plaintiff failed to establish a constitutional violation.

To the extent plaintiff contends that defendants acted with deliberate indifference to his serious medical needs because they would not provide him with information regarding his throat condition or whether he would ever be permitted to eat solid foods, plaintiff again cannot establish a constitutional violation. As an initial matter, the record reflects that substantial medical care was given to plaintiff in the course of his cancer treatment, and that his medical condition has stabilized.

---

[2] To the extent plaintiff alleges an Eighth Amendment claim against defendants based upon defendants' participation in the administrative remedy process, this claim also lacks merit because "participation in the administrative remedy proceedings is not the type of personal involvement necessary to state a claim based upon supervisor liability." See Abdel–Aziz v. Johns, No. 5:07–CT–3095–FL, 2008 WL 4279696, at *3 (E.D.N.C. Sept. 15, 2008); Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994).

10

((DE 13), Exs. 2, 14; (DE 15), Attach. p. 7). The record further reflects that defendants investigated each of plaintiff's grievances or appeals and provided him with detailed explanations of his medical care. (Andrews Decl. ¶¶ 3-5 and Attach. 1, 2; Eichenlaub Aff. ¶¶ 5-8 and Attach. 1, 2; Ratledge Decl. ¶ 4 and Attach. 1). Defendants, additionally, repeatedly directed plaintiff to contact his medical providers to answer any further questions regarding his medical care. (Id.) There is no evidence in the record that defendants acted with deliberate indifference, which requires that a prison official actual know of and disregard an objectively serious condition, medical need, or risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). There is no evidence, aside from plaintiff's conclusory allegations, to suggest that any defendant knew that plaintiff's medical treatment was inadequate. Conclusory allegations are insufficient to establish a constitutional violation. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citation omitted); see, e.g., White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required). Thus, plaintiff failed to establish a constitutional violation.

To the extent plaintiff seeks to hold defendants liable for any alleged failure on the part of medical staff to provide plaintiff with a translator, plaintiff's claim lacks merit. Specifically, plaintiff has not pled sufficient facts to show that a named defendant had any personal involvement, much less any knowledge, as to the purported failures to provide plaintiff with a translator or appropriate medical treatment. Further, plaintiff has produced no evidence to suggest that plaintiff put BOP, much less any specific defendant, on notice that he needed translation services. In fact, plaintiff's own verified allegations in his complaint suggest that medical staff did provide him with a translator on occasion. (See Compl. p. 4; Am. Compl. p. 2). Thus, plaintiff failed to establish a constitutional violation.

11

Finally, the court reiterates that plaintiff's action only is against defendants Ratledge, Eichenlaub, and Andrews in their capacities as supervisors. The court in its December 8, 2015, order permitted plaintiff the opportunity to engage in discovery to discover the identity of the individual members of the medical review committee. The court further informed plaintiff that he could amend his complaint to include the individual members of the medical review committee upon discovering their identity. Plaintiff has not sought to amend his complaint to include any new defendant. Further, to the extent plaintiff makes allegations of medical malpractice, the court declines to exercise supplemental jurisdiction over plaintiff's negligence claim. See 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); see also, Gantt v. Whitaker, 203 F. Supp.2d 503, 512 (M.D.N.C. Feb. 26, 2002) (declining to exercise supplemental jurisdiction over plaintiff's state law claims), aff'd, 57 F. App'x 141 (4th Cir. 2003). Based upon the foregoing, plaintiff failed to establish a constitutional violation, and defendants are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment (DE 36). The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 22nd day of November, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge